Submitted on record and appellant's brief January 29,
affirmed February 10, 1975

STATE OF OREGON (No. C74-04-0977 Cr),
*Appellant, v.*
MICHAEL HENRY FORD, *Respondent.*

531 P2d 740

Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Timothy Wood, Assistant Attorney General, Salem, for appellant.

No appearance for respondent.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

FOLEY, J.

The state appeals from a circuit court order suppressing evidence. ORS 138.060(3).

Police officers were executing a search warrant for "Methamphetamines and Narcotics Paraphernalia" in a residence in Portland. While the search was successfully proceeding, defendant, who was not named in the warrant, drove up in front of the house, got out of the vehicle and proceeded into the house carrying shoes, shirt and pants. He entered the house and, seeing the police, stopped a few steps inside the front door. One of the officers felt that he recognized the defendant as a person who, a year prior, was present at a residence in Clackamas County during the execution of a search warrant for marihuana and narcotics paraphernalia. This officer also had double hearsay information from an Oregon City policeman that in-

formants had told that officer that defendant within the last 90 days had been involved in the illicit sale of amphetamine in the Oak Grove, Oregon area.

As defendant stood there and the officer approached to within three feet of defendant, the officer observed a bent spoon in the left breast pocket of the shirt defendant was carrying. The officer considered this to be the type of spoon in which methamphetamine drugs are often cooked. The officer took the spoon from defendant's pocket and as he did so he observed in the same pocket a vial, which he also removed from defendant's shirt pocket. The vial contained an olive-colored liquid which, from experience, the officer thought to be amphetamine sulphate and when he removed the top from the vial the odor was similar to what had previously developed to be amphetamine sulphate. The officer then arrested defendant for criminal activity in drugs.

The trial court suppressed the spoon and vial as evidence on the basis that the view of the spoon, even with the other information the officer had, did not give probable cause to search defendant. The court held:

"* * * * *

"5. The officer did not have probable cause to seize the bent spoon.

"6. The officer did not have probable cause to search the defendant which would include the clothing which the defendant was carrying on the hanger.

"7. The officer's view of the vial was the direct consequence of the unlawful seizure of the bent spoon and therefore was unlawful.

"8. The observations made by the officer while

seizing the vial constituted a search for which there was no probable cause.

"* * * * *"

■■ We agree with the trial court. To authorize a warrantless search of a person an officer must have probable cause to believe that such search will result in finding the evidence of crime. Probable cause does not require certainty, but it does require a well-warranted suspicion that a search will produce evidence of a crime. *State v. Keith,* 2 Or App 133, 142, 465 P2d 724, Sup Ct *review denied* (1970).

■■ A search and seizure cannot be justified by its fruits. *State v. Dunavant,* 250 Or 570, 444 P2d 1 (1968). We have previously held that where an officer recognized a hashish pipe on the seat in the car in which defendant was sitting in a parking lot, the officer did not have probable cause to search the car for marihuana which he expected to find in the vehicle. This was so even though the officer by radio contact had determined that defendant had been lying to the officer as to his purpose in being there. As there pointed out, it was not illegal to own such a pipe in Oregon and such pipes were sometimes used to smoke tobacco. *State v. Parks,* 5 Or App 601, 485 P2d 1246 (1971). Similarly, there is nothing illegal about owning a bent spoon. The bent spoon, though under the circumstances here very suggestive to the officer, not being of itself contraband and being subject to so many legitimate uses, we agree with the circuit court that the view of the spoon by the officer did provide the officer a basis for speculation but not with a well-warranted suspicion that a search of defendant would result in finding the evidence of crime.

While we discuss *Parks* as supporting the deci-

sion in this case, the decision is not rested upon *Parks* as the dissent seems to suggest but on the basis that the presence of a spoon in the pocket as here does not give rise to a well-warranted suspicion that one who has such a spoon should be searched for narcotics. In assessing the reasonableness of such a search one might ask oneself: Had it been a packet of brown cigarette papers visible in the defendant's shirt pocket, would there have been probable cause to search him for marihuana?

Affirmed.

SCHWAB, C. J., dissenting.

I would hold that the police had probable cause to search the defendant for narcotics. The majority relies upon *State v. Parks,* 5 Or App 601, 485 P2d 1246 (1971), to reach a contrary conclusion. The facts here make a much stronger case for the search than did the facts in *Parks,* which we characterized as presenting a "close question."

In *Parks* the object which drew the police's attention to the defendant was a pipe. While the police recognized it as a type of pipe commonly used to smoke hashish they also recognized that such pipes were commonplace and on occasion used for the smoking of tobacco. It is common for people who smoke tobacco in pipes to carry their pipes about with them in their travels. It is not common for people to carry spoons with them except perhaps when they are camping.

In *Parks* the pipe had not been modified in a manner peculiar to an intended use for illegal purposes. Here the spoon had been bent in a manner

making it suitable for the cooking of methamphetamine.

In *Parks* the police had no information indicating that the defendant had previously been involved in the use of drugs. Here they did.

In *Parks* the defendant was not at or entering a place where drugs were believed present. Here the defendant was.

For the foregoing reasons I respectfully dissent.